Cintron v City of New York (2020 NY Slip Op 01306)





Cintron v City of New York


2020 NY Slip Op 01306


Decided on February 25, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 25, 2020

Gische, J.P., Mazzarelli, Moulton, González, JJ.


11132 302552/13

[*1] Miguel Cintron, Plaintiff-Respondent,
v
The City of New York, Defendant-Appellant, Detective Matthew Collins, etc., et al., Defendant.


James E. Johnson, Corporation Counsel, New York (Ashley R. Garman of counsel), for appellant.
Ephrem J. Wertenteil, New York, for respondent.



Order, Supreme Court, Bronx County (Mitchell J. Danziger, J.), entered October 1, 2018, which denied the City's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
Viewed in the light most favorable to plaintiff (see Thomas v City of New York, 173 AD3d 633, 635 [1st Dept 2019]), the record evidence shows that, shortly after an incident on June 3, 2007, in which George Cruz was stabbed to death, police obtained surveillance video which, while of insufficient resolution to enable identification of any of the participants, clearly depicted the fatal struggle between Cruz and an assailant who approached him from behind and began stabbing him, as well as the presence of several other individuals. During the days after the incident, the police received several reports tying a man named "Mike" or "Crazy Mike" to the stabbing, including one report stating that "Mike" resided in the basement of a private house a half-block south of where the incident occurred. Police thereafter interviewed Hysen Berisha, who resided in that house and whom they believed had witnessed the incident. Crediting Berisha's deposition testimony in this action, he initially denied knowing anything about the stabbing. The police then told Berisha that they had video showing that he had been at the scene, and, if he did not tell them who the assailant was, they would charge him as an "accessory to murder," and he would be "facing 25 years."
The detectives left the room and returned with a photograph of plaintiff (whose daughter lived in Berisha's basement, and who in his deposition in this action admitted that he is known as "Mike" and "Crazy Mike"), and asked, "Is this the guy who did the murder?" Berisha was aware that, by the time of the interview, plaintiff had already removed to Florida. This fact made Berisha "a little more comfortable" with identifying plaintiff as the assailant. Berisha then gave the police a statement providing details about the incident, including the assailant's approach from behind, and the assailant's and victim's struggle across the street to a funeral home, which were closely corroborated by the surveillance video. Berisha also stated that plaintiff lived in his basement, so that he knew him well.
The foregoing establishes that the police had probable cause to arrest plaintiff for stabbing Cruz to death (see Medina v City of New York, 102 AD3d 101, 104 [1st Dept 2012]). Berisha gave similar testimony before the grand jury, leading to plaintiff's indictment on murder and other counts, and establishing a further presumption of probable cause (see Lawson v City of New York, 83 AD3d 609, 610 [1st Dept 2011], lv dismissed 19 NY3d 952 [2012]). Plaintiff's ultimate acquittal on all counts at the jury trial, despite Berisha's consistent testimony, does not vitiate the finding of probable cause (see Jenkins v City of New York, 2 AD3d 291, 292 [1st Dept [*2]2003]).
As noted, at his deposition in this action, Berisha asserted, for the first time, that the police threatened him with murder charges in order to get him to talk, and then showed him a photograph of plaintiff, and asked him to confirm that plaintiff was the assailant. Notably, while his overall narrative of the stabbing incident remained substantially the same, Berisha asserted at his deposition that he was no longer certain that plaintiff was the assailant. Critically, however, Berisha never stated that he fabricated his initial account and grand jury and trial testimonies. To the contrary, when asked at his deposition if he identified plaintiff as the assailant "because [he] didn't want to get locked up," Berisha cautioned counsel, "Don't put words in my mouth." Instead, Berisha insisted that, "at that [earlier] point" in time, he believed that plaintiff was the assailant.
Nor is there any evidence that the police did not believe plaintiff to be the assailant. To the contrary, multiple persons had already identified plaintiff — "Crazy Mike" — as being involved in the stabbing. Additionally, plaintiff had already removed to Florida (where he was ultimately arrested some 10 months after the incident) (see People v Jamison, 173 AD2d 341, 342 [1st Dept], lv denied 78 NY2d 955 [1991]).
Even crediting Berisha's account that the police applied pressure to persuade him to talk, there is no evidence that they did so in bad faith or as part of an attempt to frame plaintiff, or that they were not genuinely looking for confirmation of something they already reasonably suspected (see People v Tarsia, 50 NY2d 1, 11 [1980]; Jenkins, 2 AD3d at 292).
The existence of probable cause constitutes a "complete defense" to the claims of false arrest and malicious prosecution (Lawson, 83 AD3d at 609-610; see Nadal v City of New York, 105 AD3d 598, 598 [1st Dept 2013], lv denied 21 NY3d 861 [2013]).
Accordingly, we reverse and grant the City's motion for summary judgment dismissing the complaint.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 25, 2020
CLERK